Good morning, and we'll hear argument next in the companion case involving Cobalt. That's Appeal 2007-1258 Ortho-McNeil Pharma v. Cobalt Pharma. Good morning to you. Welcome back to the court. Thank you, Judge Michel. Would you please help me be sure I pronounce your surname correctly? Mazzocchi. Mazzocchi. That would have been my guess, so I'm very pleased I wasn't way off. Now, please observe the economy that nothing said previously need be repeated, and then we'll try to hold Mr. Roper to the same restriction. I agree. Please proceed. May it please the court, if I may, to avoid repetition, I'd like to start at page 22 of our brief, which is a slightly more readable version of Claim 1. Now, in Claim 1, as we pointed out in our brief, it uses the word and multiple times. So, for example, it says, a sulfamate of the following formula 1, where R1 is hydrogen or alkyl, and. And that and is indicating that you're going to have a further definition. It's going to be a required definition. It's going to be a required element. What's the bottom line here? The bottom line here is that when, you know, if you want to talk about competing doctrines of claim construction, it's true, for example, that as a general rule, dependent claims can inform the meaning of independent claims. But the way in which a term is used within a claim itself, it should be construed consistently within the claim. So if you have eight usages of the word and in a conjunction. Well, when you say should be, it seems to me it's a good working hypothesis that the claim construer should assume that every time the word and appears, it means the same thing it means elsewhere and the same with or and any other word. But it's just a working hypothesis. It's not a rigid rule. That's right. And similarly, the rule about dependent claims should inform the meaning of independent claims. That's also not a rigid rule. That's a working hypothesis. Now, here, I think that the case law in with regard to the dependent claims and the concern about are we going to be construing claims to be near surplus age. If you look at the actual text of claim one, when it talks about R2 and R3 and R4 and R5 together, maybe a group of the following formula, that's expressly saying it's an option. It's not mandatory. So I don't think that saying that, oh, my goodness, if we're going to limit this claim to compounds that may not be capable of satisfying an option, that's not rendering claim language surplus age. All that's doing is you're recognizing the fact that it is optional. So similarly, the fact that claim five later mentions the compound to pyramid or spot. I'm not sure what you really mean to imply by saying optional. Well, keep in mind these R group definitions that are set forth here in claim one. When the R groups are all hydrogen, for example, then you have the product of example one. So, you know, holding them to R2, R3, R4 and R5 are independently hydrogen or lower alkyl. If all of those R groups are hydrogen, that is the product of example one that's set forth in their claims. So the claims still cover a preferred embodiment. The question then is whether those claims that satisfy this mandatory description of what the R groups are can may further satisfy the second condition. So to me, you don't get to the second condition until you've satisfied the requirements for the first condition. And I don't think that this is a problem. That depends on whether both conditions apply or they're in the alternative, which is the central issue in the case. Right, but here's the reason why I don't think that they apply exclusively in the alternative. Because what would happen if you said that R2, R3, R4, R5 are independently hydrogen, lower alkyl? Let's put that in one box. And now over here we have R3, R4, R4, R5 together may be something else. You've now got undefined, you don't have any limitations on what these R groups may be when they are together. And that's the reason why the language may be here is so critical. And that's why in our brief we repeatedly pointed out the distinction between here's a claim element R, this is something that is required, here's what these groups are going to be, versus what these groups may be. If you're going to argue that... But there's a variety of different possible combinations of these groups. It says where the R2 and R3 and or R4 and R5 together may be a group. So there's a signal there that maybe this group is formula 2, maybe that group is formula 2, maybe both are formula 2. It seems to me that's entirely a natural read of that claim. Right, but it doesn't close the group. R2 and R3 together might be... And it doesn't foreclose reading on topiramid. Right, but the problem is that it renders the claim indefinite. It only renders the claim indefinite if we agree with you that maybe it's a pure choice, they can do it or not do it. Right, but I think that's... But no limitation, if it's a true limitation, can be a matter of choice. It can be an alternative, but it's a requirement or it's nothing. If it's a limitation, it's a requirement. It may be a contingent requirement, but it's not an option, it's always a requirement. It's a definition of a limitation. Right, and here I think that the text about R2 and R3 and or R4 and R5 together may be a group of the following formula. It's an option, but the previous element that says here's what R2, R3, R4 and R5 are, that's mandatory. You have to satisfy that description, and that's exactly why topiramate, unfortunately, doesn't satisfy that description because topiramate has oxygens where these hydrogen or lower alkyl groups are supposed to be. And there's never been any argument that the two groups are equal. Ms. Mazzocchi, did you make this indefiniteness argument below? Well, we agreed to be bound by the proceedings before the district court below, but we reserved our rights to raise all issues on appeal, so we didn't waive any rights to appeal. But we don't review things that aren't decided below, so the question is was this presented to the district court which made a decision and now we can review the decision made by the district court on the issue of indefiniteness. Right. Well, I think we addressed that issue in our brief. I think that it's all part of the same whole, which is the issue that's always been... To the extent that claim interpretation is always the reverse of indefiniteness, yes, but there is different standards of review. When you're talking indefiniteness, it's got to be clear and convincing. There's a little bit more that has to be brought to the table, and I'm not sure the district court's had a chance to take a crack at that, has it? I mean, I don't believe that there was an issue that Milam raised before the district court specifically. And so there's no ruling on claim indefiniteness by Judge Chester? No, Judge Chester's not... So there's no actual ruling by a lower tribunal for the Court of Appeals to review? You're asking us to be the trial court on this issue? No, what I'm pointing out is that the reason why, if you want to talk about how would the person of ordinary skill in the art interpret the word and, the reason why you can't interpret the word and the way in which the district court did is that now you've left open a major part of the claim, and you've left it exposed, if you will, because you don't have a defined group for what can satisfy R2 and R3 and R4 and R5 together. It depends on the definition you give to the phrase may be. If we adopt your definition, your conclusion follows. If we adopt a different definition, your conclusion doesn't follow. So we're sort of back at square one of what is the right way to interpret and or may be. Right, well, I think we cited a case law, unfortunately it's unpublished case law from this court, where may be was described as being a permissive description. And it may be in some circumstances, but the point is that when you have the greater context of Claim 5 with explicit reference to Topiramate, and why doesn't that inform us that the may be may not be permissive? Well, I think that issue was addressed actually in Pfizer v. Ranbaxy, because in Pfizer v. Ranbaxy, the dependent claim was to atorvastatin hemicalcium, I believe, which was a specific salt form. The underlying independent claim was limited to atorvastatin acid. And the court noted, I think Judge Marshall, you put it in a footnote, that it may very well be that there could potentially be a claim construction issue as to whether atorvastatin acid could be read broadly enough to cover that salt. But in that case, it was found that because this compound did not actually fall within the scope of atorvastatin acid, as was originally required by the underlying independent claim, it wasn't going to expand Claim 1 to ensure that it was going to cover atorvastatin hemicalcium salts. I'm not sure that any decision, whether it's Chef America or the decision you refer to, really resolves any future claim construction case. Because it seems like under Phillips and other case law, in the end, it's all the context of the particular claim that's being disputed. And outcomes of the same word in a different context, in a different claim, may have very limited utility to help us decide the claim at hand. Well, I think that in this situation, the reason why you have to say that R2, R3, R4, R5 are independently hydrogen or lower alkyl, I think that you just take that at its own face value, which is not that that's an alternative option, but it says this is what they are. And when it comes to the word together, as it's applied to R2 and R3 and R4 and R5, what all together is basically telling you is that R2 has to link with R3, and R4 and R5 are the groups that have to link together. So together isn't saying here's a whole new set of circumstances that you're going to be dealing with as compared to the hydrogen or lower alkyl situation. Now, the claim language doesn't say that individually R2, R3, R4, and R5 will be hydrogen or lower alkyl, or in the alternative, together they are this. The claim language, when it's talking about independently, it's just saying that they don't all have to be hydrogens, they don't all have to be lower alkyls and the same kind of lower alkyls at the same time. So it lets you say that the word independently is what allows you to say R2 can be hydrogen, R3 can be lower alkyls such as methyl, R4 can be ethyl, R5 can bounce back to hydrogen. And I think that in our brief we also point out that linguistically the use of the phrase independently and together, even joined by the word and, it doesn't necessarily compel a conclusion that you put these things into two different boxes. We're talking about two different... I think it's hard to quarrel with your choice of the word compel. I don't find any result compelled by some rigid rule of linguistics. It's all contextual. Right, but then where that gets you back to, I think, and I think this is the issue that the court is struggling with, is when you've got something that on the one hand says these R groups are hydrogen or lower alkyl, but it seems like the intent of the patentee was maybe to try to cover something else, you should construe that against the patentee. They were the ones who were before the PTO. They were the ones who were trying to get these claims, and the patentee should have the burden of using precise language to make sure that they've covered what they wanted to cover. If they wanted to cover topiramate, they could have easily limited their claims to an independent claim that had the topiramate structure in it. But that's not what they did. They wanted to make sure they covered other preferred embodiments that were set forth in the specification, such as the compound that's set forth in Example 1. That was the reason why they wanted to make sure that they had that language in there about here's what these R groups are, i.e. hydrogen or lower alkyl. And I think that the Chef America case, what that fundamentally says is that it may very well be that you honestly thought you wanted to cover this. The claim language in Chef America, Claim 1, expressly called for a light and flaky pastry. I don't think there's any dispute here that a charcoal briquette, which is how the product was described, is going to satisfy that particular part of the claim language as being a light or flaky pastry. And the experts who testified in that case did the same thing that they had the experts here do at the claim construction phase, which is say, oh, well, I looked at some of the examples, and the examples all seemed to convey to me that what they really meant was you're heating the dough in an oven set at this temperature, not heating the dough to this temperature, because of course that wouldn't give you what you meant to cover by the invention. Here, they have the same problem, is that they have not adequately described the terpyramid molecule in their examples. All right, let's hear from Mr. Roper, and we'll give you back three minutes of rebuttal. I'll be very brief, Your Honor. Your Honor, first of all, just a couple of points. I just want to mention that, of course, in Epcot Gas, the court said that you don't have to follow any rigid construction rule that says a word always means exactly the same thing every time it's used in a claim. The court just said that's not a rule of construction that we're going to follow. I certainly have never heard of a rule of law that says you construe claims against the patentee. That, I don't think, is the rule that the court follows. The other case that Ms. Mazzocchi mentioned, the Pfizer versus Ranbaxy case, there was no claim construction issue in that case. In that case, there was no dispute as to what the claims meant. So I don't think those are very relevant. Now, I do want to just reiterate the fact that the Pyramid, as Chief Judge Michel asked in one of his questions, is indeed a preferred embodiment of the invention. The patent itself in columns 3 and 4 on page 888 shows that the Pyramid is the most potent of the anticonvulsants because it has the lowest dosage. So it is the preferred embodiment. And moreover, so we have the spec saying that, and moreover, that's the third one down in that table 1, at the bottom of column 3. And so the formula's on the left, and then the dosage is on the right, and that's got the lowest dose there, the 26. So that's the preferred embodiment. And, of course, so that's the spec. And, of course, in the prosecution history, the Pyramid was the elected species. So we've got it in the spec, and we've got it in claim 5, and we've got it in the prosecution history. Well, I thought it was essentially undisputed that the examiner thought the Pyramid was in, the claim drafter thought the Pyramid was in, but Mr. Hart says they're both wrong because the language won't permit that construction. Well, I think that... You're not suggesting that the examiner's understanding is somehow conclusive and binding on us, are you? No, I'm not. What I'm suggesting is, in Phillips in particular, this court said, well, how are we going to construe these claims? Well, we don't... certainly don't look strictly at the claim and then say the prosecution history and the spec and everything else doesn't mean anything. What do you do with the may be? The may be, I think, is correct. In other words, it says, when it's independent, it's one thing, and when they're together, it may be this. And the only thing in the... You're reading may be to be is. It's kind of... I think it's... Frankly, I think the may be there  of the second proposition. Here's a sentence. Nitric acid and glycerin are safely shipped independently and together may be shipped with special precautions. The may be really is just really kind of emphasizing the alternativeness of the second, but it is rather pointed at what you can do. And here, when you take the may be in conjunction with the specification that only gives those possibilities, I think it is something that compels you to say that those arguments would have the form that the specification says you have. One other thing, on the waiver point... Well, first of all, on this whole indefiniteness thing, certainly it wasn't raised below. There's different standards at issue. Maybe it's not so much a matter of waiver, it's a matter of prematurity. If and when we have a Chesler decision on claim indefiniteness, we can and should and must review it, but we don't yet have a Judge Chesler decision on that point. It was never raised below. Well, that's why we don't have a decision. I know, so we don't have a decision. So it's premature here. Well, but we're at the end. With due respect, we're at the end. I mean, it wasn't raised, but you can't go through a whole trial and say, well, you know, I didn't raise indefiniteness in that case. So let's go back and do indefiniteness and then come back up here and say... When you say we're at the end, you're not assuming a favorable result on this appeal, are you? No. I'm assuming they're going to affirm. Well, if we remand it, maybe it's a whole different ballgame. No, I know. I'm saying just affirm. I'll make that clear. Unless there be any doubt. But in dealing with that issue, Ms. Mizaki... Well, let me just say this. At A-9 in the appendix, it is clear that Cobalt said, as to what they would be bound by, that any such appeal shall be based on the record in ortho versus violence. Well, she would say she's not going out on the record. She's depending on the very same things, like the spec that... that my land was depending on, so she's not outside the record. And she also... In terms of evidence, same affidavits, same documents, same patents, etc. And she also relies on the Arrow case, which says that if you... that case says if you have a claim construction, there is no indefiniteness. Well, she's offered a claim construction, and so under that case, under her case, she doesn't have an indefiniteness argument. Thank you. All right. Ms. Mazzocchi. During the prosecution history, I just want to point out that it wasn't just... that they did actually, when they amended the claim, was they deleted other preferred embodiments that were set forth in the examples. So I don't think the fact that they tried to cover it to Pyramate is necessarily dispositive on... Well, I don't understand your logic. If they eliminated some preferred embodiments, but they didn't eliminate to Pyramate, how does that suggest that to Pyramate is supposed to be outside the claim? No, but they also... But under our construction, they still have one of the preferred embodiments, which is example one. The example one compound under Kobol's construction still falls within the scope of... I understand that. Right. No, Mr. Roper just seemed to be implying that because they've got one preferred embodiment, that the claim should be construed to try to cover all the preferred embodiments that are set forth in the specification, and I just don't think that logic follows. Well, why wouldn't that be the normal preference? If a claim has two preferred embodiments that it could be construed alternatively either to cover only one of them or to cover both of them, why wouldn't the natural reading be to construe the claim to cover both of the two preferred embodiments? I'm not aware of any authority that has ever held that in the past. I mean, I understand that Vitronics says that it is a general rule if you're going to construe the claim so that no preferred embodiments are covered, then that's a problem. But under that logic,  then maybe there's some...